```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

```
IN RE TYSON FOODS, INC.,        *
                                         MDL Docket No. 1854
FAIR LABOR STANDARDS ACT        *          4:07-MD-1854(CDL)

LITIGATION                      *              ALL CASES
```

O R D E R

This multidistrict litigation proceeding ("MDL") involves collective actions alleging that Defendant Tyson Foods, Inc. ("Tyson") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by requiring its hourly chicken processing employees to perform "off the clock" work.  Presently pending before the Court is Plaintiffs' Motion for Equitable Tolling and to Recognize the Validity of Consent Forms Previously Filed (Doc. 39).  Plaintiffs ask the Court to apply equitable tolling based upon a significant delay in the case of *Fox v. Tyson Foods, Inc.,* 4:99-CV-01612-VEH (N.D. Ala.) related to the ruling on the plaintiffs' motion for conditional certification of a nationwide collective FLSA action against Tyson. As discussed below, the motion for equitable tolling is denied. Plaintiffs also ask that the Court find valid consent forms that were originally filed in the *Fox* case and then re-filed in the cases encompassed by this MDL.  As discussed below, this motion is granted in part and denied in part.

BACKGROUND

In *Fox v. Tyson Foods, Inc.,* Case No. 4:99-CV-01612-VEH (N.D. Ala.), eleven named plaintiffs sought to represent a nationwide

collective FLSA action encompassing hourly chicken processing employees at more than fifty Tyson plants. The *Fox* plaintiffs, like Plaintiffs here, claimed that Tyson violated the FLSA by requiring its hourly chicken processing employees to perform "off the clock" work. (*E.g.,* Compl. ¶ 1, *Fox v. Tyson Foods, Inc.,* Case No. 4:99-CV-01612-VEH, Doc. No. 1 (N.D. Ala. June 22, 1999).)[1]

On October 15, 1999, the *Fox* plaintiffs filed a motion for conditional certification and nationwide notice to all similarly situated hourly Tyson chicken processing employees. (Pls.' Mot. for Conditional Certification, *Fox* Doc. No. 34 (N.D. Ala. Oct. 15, 1999).) The *Fox* court held a hearing on that motion on March 6, 2000. After the *Fox* plaintiffs filed the motion but before the *Fox* court ruled on it, approximately 5,300 Tyson employees who were potential class members submitted consent forms to "opt in" to the case. In November 2006—more than six and a half years after the plaintiffs filed their motion—the *Fox* court denied the *Fox* plaintiffs' motion for conditional certification and nationwide notice. (Mem. Order Den. Pls.' Mot. for Notice, *Fox* Doc. No. 601 (N.D. Ala. Nov. 15, 2006).)[2] The *Fox* court found that adjudication as a collective action was not "manageable or appropriate" because

---

[1] The Court will refer to docket items from the *Fox* case as "*Fox* Doc. No. [##]."

[2] While the precise reasons for the delay are unclear, the Court notes that from December 28, 2004 to November 28, 2005, the *Fox* case was stayed at the request of the parties pending issuance of a United States Supreme Court decision. (*E.g., Fox* Docs. 515, 519, 522.)

there were differences in timekeeping and compensation practices among the Tyson plants. (*Id.* at 13-14.)

After denying the motion for conditional certification and nationwide notice, the *Fox* court severed the actions of the named plaintiffs who worked at Tyson plants located outside of Alabama, and those actions were transferred to the jurisdictions where the claims arose. (Order Den. Pls.' Mot. for Notice, *Fox* Doc. No. 602 (N.D. Ala. Nov. 15, 2006).) The *Fox* court also dismissed without prejudice the 5,300 opt-in plaintiffs, effective March 1, 2007, "giving each of them the time and opportunity to file their own action in an appropriate forum[.]" (Order Dismissing Opt-In Plaintiffs at 1, *Fox* Doc. No. 606 (N.D. Ala. Dec. 18, 2006).) Thirteen new FLSA actions were filed against Tyson by the end of May 2007, claiming FLSA violations nearly identical to those asserted in *Fox* and the seven severed *Fox* actions. The majority of the consent forms that had previously been submitted in the *Fox* action were re-filed in the appropriate severed or new case. The Judicial Panel on Multidistrict Litigation granted Tyson's motion to consolidate all of the pending FLSA actions by Tyson hourly chicken processing employees into this MDL proceeding.

## DISCUSSION

### I. Equitable Tolling

To join an FLSA collective action, an employee must consent, or "opt in," to the action by filing with the court a written consent to

3

join.[3]  29 U.S.C. § 216(b); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996). "[O]pt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action." *Id.*  Therefore, an opt-in plaintiff "must file his written consent to opt into the class action prior to the expiration of the statute of limitations on his [FLSA] claim."[4]  *Id.* at 1107.  Once an individual opts in to an FLSA collective action, the statute of limitations is tolled from the date the consent form was filed, but if the court later denies certification of the collective action and dismisses the opt-in plaintiffs, the statute of limitations resumes upon that dismissal.[5]  *E.g.*, *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1380 (11th Cir. 1998).

By agreement of the parties in this MDL, notice has been sent "to current and former hourly employees [at certain designated Tyson facilities] in the preceding three years[.]"  (Joint Scheduling & Case Management Order at 2-3, Jan. 2, 2008; Joint Status Report at 1, May 15, 2008.)  The question presently before the Court is whether

---

[3] In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the Supreme Court approved district court oversight of "accurate and timely notice" to employees concerning the pendency of a collective action so the employees "can make informed decisions about whether to participate."

[4] The FLSA statute of limitations is two years for non-willful violations and three years for willful violations.  29 U.S.C. § 255(a). Plaintiffs here allege that Tyson willfully violated the FLSA.  (*E.g.* Compl. ¶ 143, *Mitchell v. Tyson Foods, Inc.*, 5:07-CV-0035 (M.D. Ga.).)

[5] Accordingly, the statute of limitations was tolled for those individuals who submitted consent forms in the *Fox* case from the date the consent form was filed through March 1, 2007, when the opt-in plaintiffs were dismissed without prejudice.

4

the doctrine of equitable tolling applies such that notice and an opportunity to opt in should also be given to Tyson's hourly chicken processing employees whose claims fall outside the three-year period currently in place.

"Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling[.]'" *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990). Equitable tolling is an "extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993). However, it is permitted "upon finding an inequitable event that prevented plaintiff's timely action." *Id.* (internal quotation marks omitted). Equitable tolling has been permitted where the plaintiff "has actively pursued his judicial remedies by filing a defective pleading during the statutory period," *Irwin*, 498 U.S. at 96, where the plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass[,]" *id.*, and where the plaintiff received inadequate notice of his right to sue and the time limits for doing so, *Browning v. AT&T Paradyne*, 120 F.3d 222, 227 (11th Cir. 1997). Equitable tolling is not generally permitted, however, where "the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96 (holding that equitable tolling was not appropriate where plaintiff failed to file his Title VII complaint within thirty days of his attorney's receipt of the right-to-sue letter); *Justice*, 6 F.3d at

5

1480 (finding that plaintiff's failure to prosecute his case barred application of equitable tolling). Equitable tolling "does not require any misconduct on the part of the defendant." *Browning*, 120 F.3d at 226.

The Eleventh Circuit has not spoken on the precise question whether FLSA's statute of limitations may be equitably tolled as to claims of potential opt-in plaintiffs based on a delay in notice to potential class members. However, a review of Eleventh Circuit authority suggests that equitable tolling does not apply unless a plaintiff is reasonably induced to delay the filing of a claim. *See Browning*, 120 F.3d at 227 (noting that equitable tolling has been approved where "plaintiff's complaint was untimely as a result of confusing communications from the EEOC" and where "the court led the plaintiff to believe she had done all that was required of her"). In *Browning*, for example, the Eleventh Circuit, emphasizing that its holding was a "very narrow one," tolled the statute of limitations on an employee's Age Discrimination in Employment Act ("ADEA") claim because the Equal Employment Opportunity Commission ("EEOC") failed to inform the plaintiff of his right to sue or the time limits for doing so *and* an EEOC investigator misinformed the plaintiff's lawyer of the applicable statute of limitations. *Id.* Likewise, the Eleventh Circuit in *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir. 2003) tolled the statute of limitations on the plaintiff's ADEA claim because the plaintiff did not reasonably suspect that age

6

discrimination was the reason why her employer eliminated her position until the employer reinstated the position and hired a younger worker to fill it. In contrast, the Eleventh Circuit declined to toll the statute of limitations in *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1435-36 (11th Cir. 1998) because the plaintiff reasonably suspected he was a victim of age discrimination in the period prior to the 180 days before the filing of his EEOC charge.

    Here, there has been no showing that any of the potential *Fox* opt-in plaintiffs were reasonably induced to refrain from filing a timely claim. Each potential claimant had the opportunity to file an individual action to vindicate his or her legal rights under FLSA. Moreover, those potential claimants who were aware of the *Fox* litigation had the additional opportunity to opt in to that litigation even though no court-approved notice had been issued. All of the potential opt-in plaintiffs knew that they were performing work "off the clock" and that they were not being paid for it. If potential opt-in plaintiffs did not know about the *Fox* litigation, they could not possibly have been induced to refrain from filing an individual FLSA claim by anything that occurred in that action. For those potential opt-in plaintiffs who were aware of the *Fox* litigation, nothing occurred in that litigation that reasonably induced them to refrain from opting in to that action or filing an individual separate action. There was never a guarantee that the *Fox*

court would approve conditional certification, and thus the potential opt-in plaintiffs had no reasonable basis for relying upon *possible* certification as a basis for delaying the filing of their claims.

Simply put, the potential opt-in plaintiffs had two options for filing a timely claim: (1) opt in to *Fox* if they knew about it, or (2) file separate FLSA claims whether they knew about *Fox* or not. Either way, no action of the *Fox* court lulled the potential *Fox* opt-in plaintiffs into inaction. Thus, no compelling equitable reason exists to allow their stale claims to be rescued. For these reasons, the Court declines to apply the extraordinary remedy of equitable tolling here.

## II.  Validity of Consent Forms Previously Filed

In addition to their motion for equitable tolling, Plaintiffs also ask that the Court recognize as valid the consent forms that were filed in the *Fox* action and then re-filed in one of the cases encompassed by the MDL. Under *Albritton v. Cagle's, Inc.* 508 F.3d 1012, 1018 (11th Cir. 2007), the Court "must interpret consent forms according to the plain meaning of their language." The Court may not "rewrite those forms to broaden their scope[.]" *Id.* at 1019. In *Albritton*, the plaintiffs had filed consent forms in an earlier FLSA collective action. After that action was decertified, the former opt-in plaintiffs filed two new lawsuits asserting substantially the same claims that had been asserted in the earlier action. *Id.* at 1015. The plaintiffs did not file new consent forms opting in to the

8

new lawsuits; rather, the attorneys filed the same consent forms that had been filed in the earlier action.  *Id.*  The Eleventh Circuit found that these consent forms were not valid in the new lawsuits because the consents were limited to the earlier litigation.  *Id.* at 1019.  The Eleventh Circuit made this determination because "the consent forms used narrow language in describing the litigation that they authorized":  (1) the consents were captioned with the lawsuit style of the earlier lawsuit, (2) the consent and notice specifically referred to the earlier lawsuit "and only that lawsuit," and (3) plaintiffs agreed to pursue their FLSA claims "in the above-captioned lawsuit."  *Id.* at 1018.  Thus, the "language of the forms limited the consent to joining" the earlier lawsuit.  *Id.*

Here, the consent form contains the caption of the *Fox* case.  It states: "I consent to become a party plaintiff in the *above listed action*[.]"  (Ex. 1 to Pls.' Mot. for Equitable Tolling and to Recognize the Validity of Consent Forms Previously Filed (emphasis added).)  It also states that "I choose to be represented *in this matter* by class counsel[.]" (*Id.*)  Thus, the *Fox* consent forms appear to be similar to the consent forms at issue in *Albritton* in that they use narrow language in describing the litigation they authorize.  However, the consent forms also contain the following sentence: "By joining this lawsuit, I designate the plaintiffs named in the complaint and listed above as my representatives, to the fullest extent possible under applicable laws, to make decisions on my behalf

9

concerning the litigation, the method and manner of conducting and resolving the litigation, and all other matters pertaining to this lawsuit." (*Id.*) Plaintiffs contend that this language distinguishes the *Fox* consent forms from those at issue in *Albritton* because the word "litigation" should be read broadly to encompass any "follow up phases" of the litigation—including new lawsuits filed after the *Fox* court denied conditional certification of the nationwide class.

The Court agrees with Plaintiffs that the language in the consent form is broad enough to authorize Plaintiffs' counsel to continue litigating on their behalf in the actions that were severed and transferred from the *Fox* action. Accordingly, the Court finds valid those consent forms that were filed in the *Fox* action and then re-filed in the appropriate severed and transferred action.

However, the Court has difficulty reconciling Plaintiffs' second argument—that the language is broad enough to authorize new lawsuits filed after dismissal of the *Fox* opt-in plaintiffs—with the Eleventh Circuit's opinion in *Albritton*. Here, as there, the consents provide that the opt-in plaintiff consents to become a party plaintiff "in the *above listed action*" and does not purport to give general consent for litigation of claims in whatever case might be filed later. Therefore, the Court finds that the consent forms re-filed in new actions that were not severed and transferred from *Fox* are not valid in the new action, so those Plaintiffs must file new consent forms

10

reaffirming their consent.[6] The Court notes that the statute of limitations was tolled for those individuals who submitted consent forms in the *Fox* case from the date the consent form was filed through March 1, 2007, when the *Fox* opt-in plaintiffs were dismissed without prejudice. *See Armstrong*, 138 F.3d at 1380. Should an individual who previously opted in to the *Fox* case file a new consent form affirming his or her consent to be represented by the representative Plaintiff(s) and class counsel in this litigation, the new consent form will be regarded as a reaffirmation of the old consent form and will be deemed to relate back to the old consent form such that the old consent form will be recognized as tolling the statute of limitations through the filing date of the new consent form.

## CONCLUSION

As discussed above, Plaintiffs' motion for equitable tolling is denied. Plaintiff's motion to find valid the consent forms that were originally filed in the *Fox* case and then re-filed in the cases encompassed by this MDL is granted as to the *Fox* opt-in plaintiffs whose consent forms were re-filed in an action that was severed and transferred from the Northern District of Alabama. However, the

---

[6] Plaintiffs ask that Tyson be directed to cooperate with Plaintiffs in providing notice to the prior opt-ins by providing updated address information or social security numbers. The Court declines. Plaintiffs contend that the prior opt-in plaintiffs agreed to be represented by Plaintiffs' counsel, and Plaintiffs' counsel should thus be responsible for keeping track of their address changes.

Court declines to recognize as valid the consent forms of *Fox* opt-in plaintiffs whose consent forms were re-filed in a new action encompassed by this MDL.

    IT IS SO ORDERED, this 15th day of October, 2008.

                                            <u>S/Clay D. Land</u>
                                                  CLAY D. LAND
                                          UNITED STATES DISTRICT JUDGE