**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| **IN RE TYSON FOODS, INC.,** | ) | |
| | ) | **MDL Docket No. 1854** |
| **FAIR LABOR STANDARDS ACT** | ) | **4:07-md-01854-CDL** |
| | ) | |
| **LITIGATION** | ) | **ALL CASES** |
| ———————————————— | ) | |
| | ) | |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to the Parties' Joint Motion for Final Approval of the Settlement Agreement and the corresponding Settlement Agreement ("Agreement"), Plaintiffs respectfully move this Court, pursuant to 29 U.S.C. §216(b), for an award of attorneys' fees and costs in connection with litigating the *In re Tyson Foods, Inc*. MDL action.

A Memorandum in Support is attached.

Dated: October 11, 2011             Respectfully submitted,

                                   */s/Christine E. Webber*

Joseph M. Sellers
Christine E. Webber
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, NW
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: jsellers@cohenmilstein.com
        cwebber@cohenmilstein.com


George E. Barrett
David W. Garrison
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
Email: gbarrett@barrettjohnston.com
        dgarrison@barrettjohnston.com


Peter D. Winebrake
THE WINEBRAKE LAW FIRM, LLC
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Telephone: (215) 884-2491
Facsimile: (215) 884-2492
Email: pwinebrake@winebrakelaw.com


Roger K. Doolittle
460 Briarwood Drive
Suite 500
Jackson, MS 39206
Telephone: (601) 957-9777
Facsimile: (601) 957-9779
Email: rogerkdoolittle@aol.com

*/s/ Robert E. DeRose*
Robert E. DeRose
BARKAN MEIZLISH HANDELMAN
GOODIN DEROSE WENTZ, LLP
250 East Broad Street
10th Floor
Columbus, OH 43215
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
Email: bderose@barkanmeizlish.com
        kstone@barkanmeizlish.com


Robert L. Wiggins, Jr.
Robert F. Childs, Jr.
Candis McGowan
Ann K. Wiggins
WIGGINS, CHILDS, QUINN &
PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
Telephone: (205) 314-0500
Fax: (205) 254-1500
Email: rwiggins@wcqp.com
        rfc@wcqp.com
        cmcgowan@wcqp.com
        akw@wcqp.com


Preyesh Maniklal
MANIKLAL & DENNIS, LLP
3250 Peachtree Industrial Blvd.
Suite 101
Duluth, GA 30096
Telephone: (404) 875-0630
Facsimile: (678) 990-5887
Email: preyeshmaniklal@gcmdlaw.com


Robert J. Camp
THE COCHRAN FIRM
505 North 20th St., Suite 825
Birmingham, AL 35203
Telephone: (205) 244-1115
Facsimile: (205) 244-1171
Email: rcamp@cochranfirm.com

Jairus Gilden
Of Counsel, METCALF, KASPARI,
HOWARD, ENGDAHL & LAZARUS
333Parkdale Plaza
1660 South Highway 100
Minneapolis, MN 55416-1573
Telephone: (312) 239-0524
Facsimile: (800) 845-1962
Email: jgilden@sbcglobal.net

Debra Gardner
PUBLIC JUSTICE CENTER
1 N Charles St., Suite 200
Baltimore, MD 21201
Telephone: (410) 625-9409
Facsimile: (410) 625-9423
Email: gardnerd@publicjustice.org

Richard Celler
MORGAN & MORGAN
7450 Griffin Road, Suite 230
Davie, FL 33314
Telephone: (954) 318-0268
Facsimie: (954) 333-3515
Email: rceller@forthepeople.com

Deirdre M. Stephens-Johnson
David Moskowitz
MORGAN & MORGAN, P.A.
191 Peachtree Street, N.E.
42nd Floor
Atlanta, GA 30303
Telephone: (404) 965-8811
Facsimile: (404) 965-8812
Email: djohnson@forthepeople.com
            dmoskowitz@forthepeople.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

|  |  |  |
|---|---|---|
| **IN RE TYSON FOODS, INC.,** | ) | |
| | ) | **MDL Docket No. 1854** |
| **FAIR LABOR STANDARDS ACT** | ) | **4:07-md-01854-CDL** |
| | ) | |
| **LITIGATION** | ) | **ALL CASES** |
| ———————————————— | ) | |

**PLAINTIFFS' MEMORANDUM  IN SUPPORT OF THEIR MOTION FOR**
**ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND PROCEDURAL HISTORY ........................................................ 1

II.   APPLICABLE LEGAL STANDARDS ............................................................................. 7

    A.    The Plaintiffs Prevailed .......................................................................................... 8

    B.    Lodestar Calculation ............................................................................................... 8

        1.    Reasonable Hourly Rate ............................................................................. 9

        2.    Reasonable Hours ..................................................................................... 14

        3.    No Factors Support Decreasing Lodestar ................................................ 15

        4.    Summary of the Lodestar Sought ............................................................. 17

III.  CONCLUSION .............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*ACLU v. Barnes,*
  168 F. 3d 423 (11th Cir. 1999) .................................................................10, 14

*Allen v. United States Steel Corp.,*
  665 F. 2d 689 (5th Cir. Unit B 1982)......................................................14

*American Disability Ass'n, Inc. v. Chmielarz,*
  289 F. 3d 1315 (11th Cir. 2002) .............................................................9

*Blanchard v. Bergeron,*
  109 S. Ct. 939, 103 L.Ed. 2d 67 (1989)................................................9

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,*
  532 U.S. 598 (2001).................................................................................8

*Carnegie v. Mutual Sav. Life Ins. Co.,*
  Case No. CV-99S3292NE, 2004 WL 3715446 (N.D. Ala. Nov. 23, 2004) ...........................9

*Cullens v. Georgia Dep't. of Transp.,*
  29 F. 3d 1489 (11th Cir. 1994) ...............................................................10

*Dillard v. City of Greensboro,*
  213 F. 3d 1347 (11th Cir. 2000) .............................................................10, 15

*Dowdell v. City of Apopka,*
  698 F. 2d 1181 (11th Cir. 1983) .............................................................10, 18

*Duckworth v. Whisenant,*
  97 F.3d 1393 (11th Cir. 1996) ................................................................10

*Fegley v. Higgins,*
  19 F.3d 1126 (6th Cir. 1994) ..................................................................16

*Fox v. Tyson Foods, Inc.,*
  No. 99-cv-1612 (N.D. Ala. 1999)........................................................ *passim*

*Hearn v. General Electric Company,*
  Case No. 93-T-424-S, 1996 WL 937034 (M.D. Ala. Sept. 12, 1996) ....................................18

*Heder v. City of Two Rivers,*
  255 F.Supp.2d 947 (E.D. Wis. 2003)......................................................17

ii

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)..................................................................................................7, 8, 9

*Hodgson v. Miller Brewing Co.,*
    457 F.2d 221 (7th Cir. 1972) ....................................................................................17

*In re "Agent Orange" Product Liability Litigation,*
    818 F. 2d 226 (2nd Cir. 1987).................................................................................11

*In re Department of Energy Stripper Well Exemption Litigation,*
    695 F. Supp. 1097 (D. Kansas 1987) .......................................................................11

*In Re HPL Technologies, Inc. Securities Litigation,*
    366 F.Supp.2d 912 (N.D. Cal. 2005) .......................................................................13

*In re Tyson Foods FLSA MDL,*
    694 F. Supp. 2d 1372 (M.D. Ga. 2010) .................................................................3, 4

*Interfaith Community Organization v. Honeywell International, Inc.,*
    426 F.3d 694 (3rd Cir. 2005) ...................................................................................13

*Johnson v. Georgia Highway Express,*
    488 F.2d 714 (5th Cir. 1974) .....................................................................................9

*Johnson v. University College of Univ. of Ala. In Birmingham,*
    706 F. 2d 1205 (11th Cir. 1983) .........................................................................10, 14

*Kempf v. Barrett Bus. Servs.,*
    No. C-06-3161 ...........................................................................................................13

*Longden v. Sunderman,*
    979 F.2d 1095 (5th Cir. 1992) ..................................................................................18

*Maddrix v. Dize,*
    153 F.2d 274 (4th Cir. 1946) ....................................................................................17

*Mancini v. Dan P. Plute, Inc.,*
    358 Fed.Appx. 886, 2009 WL 4912140 (9th Cir. 2009)...........................................13

*National Coalition for Students with Disabilities v. Bush,*
    173 F. Supp. 2d 1272 (N.D. Fla. 2001)......................................................................9

*Newport News Shipbuilding and Dry Dock Co. v. Holiday,*
    591 F.3d 219 (4th Cir. 2009) ....................................................................................13

*Norman v. Housing Authority of City of Montgomery,*
    836 F. 2d 1292 (11th Cir. 1988) ...................................................................... */passim/*

iii

*Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*,
   107 S. Ct. 3078 (1987)..................................................................................8

*Perdomo v. Sears, Roebuck & Co.*,
   Case No. 97-2822-CIV-T-17A, 1999 WL 1427752 (M.D. Fla. Dec. 3, 1999) ......................17

*Perrin v. John B. Webb & Assocs.*,
   Case No. 6:04-cv-399-Orl..............................................................................17

*Rivera v. Rivera*,
   2011 WL 3667486 (N.D. Cal. 2011) .................................................................13

*Robertson v. Alabama State Dept. of Education*,
   727 F. Supp. 1422 (M.D. Ala. 1989) ................................................................9

*Shannon v. Saab Training USA, LLC*,
   Case No. 6:08-cv-803-Orl-19DAB, 2009 WL 1772808 (M.D. Fla. June 23, 2009)..............17

*Shelton v. Ervin*,
   830 F.2d 182 (11th Cir. 1987) ......................................................................7

*Shorter v. Valley Bank & Trust Co.*,
   678 F.Supp. 714 (N.D. Ill. 1988) ...................................................................15

*Texas State Teachers Ass'n v. Garland Independent School District*,
   489 U.S. 782 (1989).....................................................................................8

*United Slate, Tile and Composition Roofers v. G&M Roofing and Sheet Metal Co., Inc.*,
   732 F.2d 495 (6th Cir. 1984) .......................................................................17

*Wales v. Jack M. Berry, Inc.*,
   192 F.Supp.2d 1313 (M.D. Fla. 2001) ...........................................................17

*Williams v. Tyson Foods, Inc.*,
   No. 07-cv-00093 (M.D. Ga.) ...............................................................5, 6, 17

## STATUTES

28 U.S.C. §1407...............................................................................................1, 2

29 U.S.C. § 216(b) ..........................................................................................1, 7

29 U.S.C. § 255.................................................................................................5

29 U.S.C. § 260.................................................................................................5

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On June 22, 1999, eleven named plaintiffs from eight different states filed *Fox v. Tyson Foods, Inc.*, No. 99-cv-1612 (N.D. Ala. 1999) as a collective action challenging Tyson's mastercard line time payroll system.  Plaintiffs sought conditional certification and issuance of notice under section 216(b) of the Fair Labor Standards Act ("FLSA").  Approximately 5,300 Tyson employees filed opt-in forms to join the *Fox* lawsuit.  Tyson sought summary judgment on multiple occasions, each of which was unsuccessful.  In November of 2006 – more than six and a half years after the *Fox* plaintiffs filed their motion for conditional certification -- the *Fox* court denied the conditional certification on a nationwide basis.  The court retained jurisdiction over the three named plaintiffs from the Albertville, Alabama facility, M.H. Fox, Teresa Brothers, and Angela Hatchett, whose claims were ultimately resolved.  The *Fox* court then severed the actions of the named plaintiffs, transferring seven of them to other jurisdictions, and dismissed without prejudice the 5,300 opt-in plaintiffs giving each of them time to re-file their actions in a different forum.

By the summer of 2007, 18 different FLSA collective actions were pending against Tyson, including the seven that had been severed from *Fox* and transferred, as well as newly filed cases by plaintiffs seeking to represent Plant-wide collective actions (or in one case, a statewide action) pursuant to the FLSA seeking compensation from Tyson for all hours worked in different jurisdictions around the country.  Tyson, despite having argued to the *Fox* court that nationwide collective treatment was not appropriate, sought to have all 18 cases consolidated pursuant to 28 U.S.C. §1407 before the  Joint Panel for Multi District Litigation ("JPMDL").  On August 17, 2007, the JPMDL transferred the original 18 collective actions to the United States District Court for the Middle District of Georgia for coordinated pretrial proceedings pursuant to

28 U.S.C. §1407 before Judge Clay D. Land[1]. *See* Doc. Entry #1. Subsequently, an additional

eight[2] cases were consolidated in *In re Tyson Foods, Inc. Fair Labor Standards Act Litig*, and the

MDL now encompasses 41 plants.[3] *See* Doc. Entry # 53, 476, and 5/12/08 Text Only Entry.

Upon transfer to the Middle District of Georgia, Tyson agreed to conditional certification and

notice to the current and former employees of the 41 plants whereupon approximately 17,000

opt-ins became part of this MDL by opting in to one of the 26 coordinated cases.

The Court ordered the parties to select eight of the 41 plants ("test plants") for discovery,

motions for decertification and summary judgment if appropriate. *See* Doc. Entry # 29.  The

---

[1] The 18 original actions include *Ackles, et al. v. Tyson Foods, Inc*., 4:07-cv-02000-CDL; *Buchanan, et al. v. Tyson Chicken, Inc., et al.,* 4:07-cv-02001-CDL; *Dobbins, et al. v. Tyson Chicken, Inc., et al*., 4:07-cv-02002-CDL; *Potter, et al. v. Tyson Chicken, Inc., et al.*, 4:07-cv-02003-CDL; *Adams, et al. v. Tyson Foods, Inc*., 4:07-cv-02004-CDL; *McCluster, et al. v. Tyson Foods, Inc*., 4:06-cv-00143-CDL; *Mitchell v. Tyson Foods, Inc.*, 5:07-cv-00035-CDL; *Atkins, et al. v. Tyson Foods, Inc.*, 5:07-cv-00084-CDL; Joyner v. Tyson Foods, Inc., 4:07-cv-02008-CDL; *Garrett v. Tyson Foods, Inc.,* 4:07-cv-02009-CDL; *T. White v. Tyson Foods, Inc.*; 4:07-cv-02010-CDL; *Brown v. Tyson Foods, Inc.*, 4:07-cv-02011-CDL; *Jones, et al. v. Tyson Foods, Inc., et al.*; 4:07-cv-02012-CDL; *Williams, et al. v. Tyson Foods, Inc., et al.*; 4:07-cv-02013-CDL; *Walton, et al. v. Tyson Foods, Inc., et al*.; 4:07-cv-02014-CDL; *Woodworth v. Tyson Foods, Inc.*; 4:07-cv-02015-CDL; *Balch, et al. v. Tyson Foods, Inc*.; 4:07-cv-02016-CDL; and *Earl v. Tyson Foods, Inc*.; 4:07-cv-02017-CDL.

[2] These eight actions include *M. William, et al.s v. Tyson Foods, Inc.*; 1:07-cv-00093-CDL (closed on 2/7/11);  *Laney, et al. v. Tyson Foods, Inc.*; 4:07-cv-00092-CDL;  *Meyer, et al. v. Tyson Foods, Inc.*; 4:08-cv-02000-CDL;  *Leak v. Tyson Foods, Inc.*; 4:08-cv-02001-CDL; *Maldonado v. Tyson Foods, Inc*.;4:08-cv-02002-CDL; *Armstrong, et al. v. Tyson Foods, Inc.*, 4:08-cv-02003-CDL; *White, et al. v. Tyson Foods, Inc*.; 4:08-cv-02004-CDL; and *Tuck v. Tyson Foods, Inc*.; 4:08-cv-02005-CDL.

[3] The three named *Fox* Plaintiffs tried their individual cases before District Judge Hopkins in the Northern District of Alabama.  Angela Hatchett (*Hatchett v. Tyson Foods, Inc.*, No. 4:06-CV-4677-VEH) successfully reached a jury verdict in her favor for 26 minutes a day for every day she was employed at Tyson within the applicable statute of limitations (the verdict was for a sum certain which corresponded to 26 minutes/day on the stipulation submitted by the parties, which calculated the dollars to award for different numbers of minutes per day of uncompensated time). Teresa Brothers (*Brothers v. Tyson Foods, Inc.*, No. 4:06-CV-4676-VEH) successfully reached a jury verdict in her favor for 8 minutes a day for every day she was employed at Tyson within the applicable statute of limitations.  M.H. Fox's (*Fox v. Tyson Foods, Inc.*, No. 99-1612) trial ended in a mistrial when he suffered a heart attack.  Tyson offered judgment to Mr. Fox so that he did not have to retry his case.

2

following cases were selected:

1.    *Williams, et al. v. Tyson* – Dawson Georgia; 07-00093

2.    *Balch, et al. v. Tyson* – Broken Bow, Oklahoma; 4:07-cv-02016-CDL

3.    *Armstrong, et al. v. Tyson* – Union City, Tennessee; 4:08-cv-02003-CDL

4.    *Adams, et al. v. Tyson* – Dardanelle, Arkansas; 4:07-cv-2004-CDL

5.    *Joyner, et al. v. Tyson* – Corydon, Indiana; 4:07-cv-2008-CDL

6.    *Meyer, et al. v. Tyson* –Sedalia, Missouri; 4:08-cv-02000-CDL

7.    *Adams, et al. v. Tyson* – Berry Street, Springdale, Arkansas; 4:07-cv-2004-CDL

8.    *Adams, et al. v. Tyson* – Pine Bluff, Arkansas; 4:07-cv-2004-CDL.

From July 2008 until May 2009 the parties engaged in discovery at eight plants.  At the conclusion of the discovery period Tyson moved to decertify the collective actions at all eight test plants. *See* Doc. Entry # 598, 600-05, 607.  The Court denied Tyson's motion to decertify in his March 16, 2010 Order ("Decertification Order"). *See* Doc. Entry # 251;  *In re Tyson Foods FLSA MDL*, 694 F. Supp. 2d 1372 (M.D. Ga. 2010).

At the same time Tyson filed its unsuccessful Motion for Decertification, it filed Partial Motions for Summary Judgment with respect to the Portal-to-Portal Act (Doc. Entry # 593) and the FLSA's §203(o) provision as it applied to *Joyner, et al. v. Tyson,* 4:07-cv-02008 ("Corydon") (*Joyner* Doc. Entry # 167) and *Adams, et al. v. Tyson,* 4:07-cv-02004 ("Dardanelle") (*Adams* Doc. Entry # 201).  Tyson argued that a) the donning and doffing activities were not integral and indispensable to Plaintiffs' employment and were thus excluded based on the Portal-to-Portal Act; and b) that the donning and doffing activities in Corydon and Dardanelle, because they are unionized plants, were excluded by §203(o) or, in the alternative, the good faith defense. *Id.* The Court rejected Defendant's position with respect to the Portal-to-Portal Act and denied that

3

motion for summary judgment.  *See* Doc. Entry # 698.  The Court partially granted and partially

denied Tyson's motion for summary judgment with respect to §203(o), as the Court found that

donning and doffing was "clothes changing," and was not compensable under §203(o), based on

the custom or practice in those plants of not compensating employees for donning and doffing,

but found that time spent sanitizing and walking post-donning and pre-doffing was compensable

because donning and doffing, though excluded under §203(o), were still principal activities

under the continuous workday rule.  *Id.*

 Following the Court's order with respect to the Motions for Summary Judgment, Tyson

filed a Motion for Certification of Permissive Appeal with respect to the Dardanelle and Corydon

plants (Doc. Entry # 700), which was granted by the district court (Doc. Entry # 705).  The

Eleventh Circuit then denied Tyson's appeal because "it [was] not clear that an interlocutory

appeal would materially advance the termination of this litigation."  *See* Doc. Entry # 723.

 The Decertification Order concluded the pretrial proceedings for all eight test plants and

ordered the transfer of seven of those cases back to the Transferor Courts.  *See* Doc. Entry # 251;

*In re Tyson Foods FLSA MDL*, 694 F. Supp. 2d 1372 (M.D. Ga. 2010).  *Williams, et al.,* the

Dawson facility case ("Dawson"), was originally filed in the Middle District of Georgia and was

ready to be tried here.  The Court, however, delayed the actual transfer of the remaining seven

test plants until the completion of the Dawson trial, citing the Dawson case as the "bellwether

trial" to "either confirm the wisdom of the Court's ruling today or will demonstrate its flaws."

*Id*. at p. 14.

 Additional discovery on the merits and damages was conducted in Dawson.  In addition,

time studies were conducted in *Balch, et al. v. Tyson* ("Broken Bow") and *Armstrong, et al. v.*

*Tyson* ("Union City").  Numerous pretrial motions were filed in Dawson.  Further, Tyson

4

withdrew its *de minimis* defense, its assertion of a good faith defense pursuant to 29 U.S.C. § 260, and its lack of willfulness defense pursuant to 29 U.S.C. § 255 as to Dawson. *See* Doc. Entry 728.

Dawson was set for trial on October 12, 2010. The parties moved for a stay of the Dawson trial to pursue mediation and potential resolution on September 20, 2010. *See* Doc. Entry # 768. The Court granted the stay on September 22, 2010, continuing the Dawson trial until February 14, 2011 and giving the parties 90 days from the entry of the order to explore resolution of the MDL actions. *See* Doc. Entry # 769. On November 9, 2010, Plaintiffs filed a Motion to Lift Stay following unsuccessful mediation attempts among the Parties with the Hon. Kathleen Roberts of JAMS on October 28, November 8, and November 9, 2010 (Doc. Entry # 771) which was granted by the Court on November 15, 2010. *See* 11/15/10 Text Only Entry.

On December 21, 2010, the Parties filed their monthly status report indicating that the Parties had met with mediator Hunter Hughes and on December 17, 2010, reached an agreement in principle to resolve the *Williams* litigation. *See* Doc. Entry # 796. The Parties also informed that Court that they had agreed to resume mediation on February 9, 2011 regarding the remaining MDL actions. *Id.* The Parties subsequently filed two joint motions for extensions of time to file reply briefs in *Williams*, which were granted by the Court on December 21, 2010 and January 11, 2011. *See* Doc. Entry # 797-798. On January 21, 2011, Tyson filed a Notice of Settlement with the Court, indicating that *Williams* had reached a settlement agreement of all claims except attorneys' fees and costs to be addressed at a later mediation or motion with the Court. *See* Doc. Entry # 799. On January 27, 2011, the Parties filed a Joint Motion for Final Approval of Confidential Settlement Agreement with respect to *Williams*. *See* Doc. Entry # 801. The Court granted the Parties' Motion on February 7, 2011. *See* Doc. Entry # 807.

5

Following the *Williams* mediation, the Parties agreed to resume mediation in the spring of 2011 to attempt to resolve the MDL actions. *See* Doc. Entry 796. Over the course of several months, the Parties filed Joint Motions to Extend the Stay of the MDL action until April 29, 2011 while the Parties underwent mediation with Mr. Hughes. *See* Doc. Entry # 806 and 809. On May 27, 2011 Lead Plaintiffs' Counsel accepted a global settlement with respect to the claims in the MDL action.

Following the filing of the Parties' Joint Motion for Final Approval of Settlement Agreement and the fully executed Settlement Agreement ("Agreement"), Plaintiffs submit their Motion for Attorneys' Fees and Expenses. This Motion has been fully briefed and is ready for this Court's order on the same.

Plaintiffs' Motion for Attorneys' Fees and Expenses relies upon the declarations prepared by each firm which has participated in this action. Those declarations and the attached time records set forth in detail the hours worked and lodestar accrued in this action to date. A summary is set forth here:

| Firm | Hours | Lodestar | Expenses |
|------|-------|----------|----------|
| Cohen Milstein Sellers & Toll | 18,602.28 | $5,962,506.38 | $942,411.06 |
| Wiggins Childs Quinn & Pantazis | 6993.6 | $3,759,069.90 | $495,093.81 |
| Barkan Meizlish | 1,940.77 | $630,601.00 | $56,068.72 |
| Barrett Johnston | 1,734.6 | $528,447.50 | $50,472.66 |
| The Winebrake Firm | 1,257.2 | $568,902.50 | $38,603.36 |
| Metcalf Kaspari | 249.1 | $91,225.00 | $3,602.89 |
| Jairus Gilden | 1,100.5 | $391,690.25 | $16,695.76 |
| The Cochran Firm | 1,264.6 | $223,336.50 | $41,983.74 |
| Morgan and Morgan | 1,645.6 | $658,240.00 | $43,490.48 |
| Public Justice Center | 868.8 | $335,125.10 | $5,450.03 |
| Mankilal and Dennis | 911.9 | $455,950.00 | $0 |
| Roger Doolittle | 2011.7 | $1,082,778.20 | $26,415.27 |
| **TOTAL** | **38,580.65** | **$14,661,247.13** | **$1,720,287.78** |

Plaintiffs' request for an award of $14,500,000 to cover all fees and expenses in this litigation thus represents just 87% of the total lodestar worked in this case, after expenses are

6

deducted.

## II.    APPLICABLE LEGAL STANDARDS

The FLSA has a fee-shifting provision which provides that reasonable attorneys' fees and costs should be awarded to a prevailing party.  29 U.S.C. § 216(b).  The federal courts have long recognized the profound importance of plaintiffs' right to recover attorneys' fees under the FLSA.  *See, e.g., Shelton v. Ervin,* 830 F.2d 182, 183 (11th Cir. 1987) (FLSA's fee recovery provision is not collateral to the merits of an FLSA lawsuit but, rather, is an "integral part of the merits" of the lawsuit).  A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)(quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912).  Providing attorneys fees is essential to ensure that low-wage workers will have access to counsel to enforce these important rights.

In a claim for attorney's fees the established procedure is for the court to determine the number of hours reasonably expended on the litigation and multiply that figure by a reasonable hourly rate.  *Hensley*, 461 U.S. at 434. The resulting yield is what is known as the "lodestar."  In arriving at the reasonable hourly rate, the court typically looks to the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Norman v. Housing Authority of City of Montgomery*, 836 F. 2d 1292 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)).  Current market rates of compensation are appropriate to compensate for the delay in payment of fees. *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 107 S. Ct. 3078, 3082 (1987); *Norman*, 836 F. 2d at 1302 & 1306.  In this case, plaintiffs' counsel seek hourly rates for the attorneys and paralegals that represent current market rates for individuals with their skills, experience, and reputation.  See Exhibits 1-13, 15-20.

A.     The Plaintiffs Prevailed

The Supreme Court defined prevailing parties as parties that achieve "success on any

significant issue in litigation which achieves some of the benefit the parties sought in bringing

suit." *Hensley*, 461 U.S. at 433. The Supreme Court further explained that, "the touchstone of the

prevailing party inquiry must be the material alteration of the legal relationship of the parties in a

manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v.*

*Garland Independent School District*, 489 U.S. 782, 792-93 (1989).  *See also Buckhannon Bd. &*

*Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605

(2001) (the essential test established by the Court requires the plaintiff to achieve a "judicially

sanctioned change in the legal relationship of the parties").

While settlement agreements, such as here, that have been court approved and entered as

an order are sufficient to establish prevailing party status, even in the absence of a formal

judgment from the court, "if the district court either incorporates the terms of a settlement into its

final order of dismissal *or* expressly retains jurisdiction to enforce a settlement, it may thereafter

enforce the terms of the parties' agreement," thus establishing a material change to the parties'

relationship as required by the Supreme Court.  *American Disability Ass'n, Inc. v. Chmielarz*,

289 F. 3d 1315, 1320 (11th Cir. 2002); see also *National Coalition for Students with Disabilities*

*v. Bush*, 173 F. Supp. 2d 1272, 1279 (N.D. Fla. 2001); *Carnegie v. Mutual Sav. Life Ins. Co*.,

Case No. CV-99S3292NE, 2004 WL 3715446, *26 (N.D. Ala. Nov. 23, 2004).  Here, the

Parties' Agreement has been approved by the Court, with the Court to retain jurisdiction to

interpret and enforce the Agreement.  *See* Agreement at ¶ 2.8, 7.1, 8.2.  Based on the language in

the Agreement, Plaintiffs should be considered prevailing parties for purposes of this Motion.

B.     Lodestar Calculation

In establishing the hourly rate, a court is usually guided by the 12 factors set out in

8

*Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see also Blanchard*

*v. Bergeron*, 109 S. Ct. 939, 943, 103 L.Ed. 2d 67 (1989); *Hensley*, 461 U.S. at 434 n.9; *Norman*,

836 F. 2d at 1299; *Robertson v. Alabama State Dept. of Education*, 727 F. Supp. 1422, 1426

(M.D. Ala. 1989). The *Johnson* factors are: (1) the time and labor required; (2) novelty and

difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the

preclusion of other employment by the attorney due to the acceptance of the case; (5) the

customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations

imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9)

the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar

cases. *Johnson*, supra at 717-19. Not all of the *Johnson* factors must be considered, but at least

some have utility in establishing the hourly rate.  *Norman*, supra at 1299.

   1. <u>Reasonable Hourly Rate</u>

   The reasonable hourly rate is defined in this Circuit as, "the prevailing market rate in the

relevant legal community for similar services for lawyers of reasonably comparable skills,

experience, and reputation." *ACLU v. Barnes*, 168 F. 3d 423, 436 (11th Cir. 1999), citing

*Norman*, 836 F. 2d at 1299.  Such evidence of a "reasonable" rate may be made via a showing of

"direct evidence of charges by lawyers under similar circumstances or by opinion evidence."

*Norman*, 836 F. 2d at 1298.  It has been held that what a lawyer charges her clients is, "powerful,

and perhaps the best, evidence of [her] market rate; that is most likely what [she] is paid as

'determined by supply and demand.'" *Dillard v. City of Greensboro*, 213 F. 3d 1347, 1354-1355

(11th Cir. 2000), quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).  In determining the

appropriate market for comparison, courts should consider the difference in rate setting between

firms with long-standing clients who are repeat customers, and plaintiffs' firms without such

9

repeat business.  *Norman*, 836 F.2d at 1300, 1305 ("long-standing relationships with business clients may cause the rates to be depressed" so the rate for plaintiffs' attorney should be set based on cases "where the representation is not the product of an ongoing relationship between the attorney and the client"); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (same); see also *Fox v. Tyson Foods*, slip op. (2/17/09) at 36-37, attached here to as Ex. 14.

The general rule in this Circuit is that the "relevant market" to be determined by the court is the location where the case is filed. *See Cullens v. Georgia Dep't. of Transp.*, 29 F. 3d 1489, 1494 (11th Cir. 1994).  Jeffrey Bramlett, recent president of the Bar of the State of Georgia, has opined that the rates sought by Plaintiffs here are at or below rates currently being charged for cases of comparable complexity in the Georgia legal market.  Declaration of Jeffrey Bramlett, Ex. 20, at ¶ 11.  Indeed, Mr. Bramlett noted that the rates sought here are on the low end of market rates, and that those rates assume regular payment for legal services, rather than the delay in payment and risk of non-payment inherent in the contingent nature of Plaintiffs' representation here.  *Id.*

Moreover, there are exceptions to the forum rule for identifying the relevant market, and with regard to civil rights cases it has been recognized that a civil rights plaintiff "may not be charged with selecting the nearest and cheapest attorney." *Dowdell v. City of Apopka*, 698 F. 2d 1181, 1192 (11th Cir. 1983); *see also Johnson v. University College of Univ. of Ala. In Birmingham*, 706 F. 2d 1205, 1208 (11th Cir. 1983).  In *Gay Lesbian Bisexual Alliance v. Sessions*, the district court found, "it is proper to consider a different legal market if it appears unlikely that there would be any attorneys in the local market who would be willing to take the case and who would possess sufficient expertise in the area of law involved." 930 F. Supp. 1492, 1495 (M.D. Ala. 1996).  Judge Hopkins, of the Northern District of Alabama, found, in reference

10

to the *Fox* fee petition that only a national firm would take on a case of this size and complexity, and that national rates were therefore appropriate.  Slip op. (2/17/09) at 33-35, Ex. 14.  That finding – made when a case filed as a national collective action had been reduced to three individual plaintiffs – is even more appropriate here, where 26 separate actions involving 41 plants throughout the country have been united in one multi-district litigation.  Several highly experienced attorneys, experts in FLSA litigation, have opined that national rates sufficient to obtain highly skilled attorneys are necessary in a case such as this one.  See the declarations of Joseph Whatley at ¶¶ 12-16 (attached as Ex. 15); James Kaster at ¶¶ 11, 13 (attached as Ex. 16); Sam Smith at ¶¶ 10-13 (Ex. 17); Bruce Rogers at 4-9 (Ex. 18); and William Baxley at 4-9 (Ex. 19).  Moreover, most of the cases that make up this MDL did not originate in this jurisdiction, but were transferred here pursuant to Order of the JPML.  Plaintiffs can hardly have been expected to change lawyers when the cases were transferred by the JPML.

Indeed, in *In re "Agent Orange" Product Liability Litigation*, 818 F. 2d 226, 232 (2nd Cir. 1987), the court addressed the need for a lodestar calculation that departs from the typical forum rule in consolidated national litigation.  *Id.*  The court concluded,

> [I]n an exceptional multiparty case such as this, where dozens of non-local counsel from all parts of the country are involved, public policy and administrative concerns call for the district court to be given the necessary flexibility to impose a national hourly rate when an adequate factual basis for calculating the rate exists.

*Id.* The court further explained that, "the risk of overcompensation or undercompensation on a large scale, apparent under the forum rule, is somewhat neutralized, while, at the same time, the administrative burden on the district court, apparent under the varying rate rule, is reduced to a manageable level."  *Id.* at 233.  *See also In re Department of Energy Stripper Well Exemption Litigation*, 695 F. Supp. 1097, 1107 (D. Kansas 1987)("Since the instant litigation is multidistrict in nature, this Court believes the relevant community for hourly rate purposes is the group of

11

attorneys who specialize in oil and gas law in complex, multidistrict litigation"). The multi-district nature of this litigation provides a further basis for applying national rates here, with the relevant community being attorneys who specialize in wage and hour collective actions, particularly nationwide and MDL cases.

In addition to the size, complexity and MDL-nature of this case, it also raised novel issues that were impacted by changing rulings issued by the U.S. Supreme Court and various federal appellate courts in the course of this litigation. Smith Decl., Ex. 17, at ¶¶ 10-11. This further justified the need for counsel with national expertise is this evolving area of law. In addition, the fact that Tyson's lead counsel was from a different legal market (Washington, DC) provides further support for the national market rates. Due to Tyson's extensive litigation resources, there are a limited number of law firms that could prosecute these cases against Tyson on a purely contingency fee basis, with resources to underwrite litigation of this scope. Thus, setting attorneys' rates in this case by national, rather than local, markets is well justified to award fair compensation, avoid windfalls, and maximize judicial efficiency. Moreover, the reasonable legal market for the present case should not be so limited as to have effectively precluded the plaintiffs from having obtained adequate counsel in this matter or to preclude other potential plaintiffs from doing so in the search to vindicate their federally protected rights.

In addition to the declarations attached hereto as Exs. 1-13, which address specific attorneys and evidence supporting their hourly rates, other evidence supports rates in the range sought here.

The *Laffey* matrix was developed in a fee-shifting case, and, by its own terms, is "intended to be used in cases in which a 'fee-shifting' statute permits the prevailing party to recover 'reasonable' attorneys' fees." *See* Laffey Matrix 2003-2010, *available at*

http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf (explanatory note

1).  It sets the rate for an attorney with 20 or more years of experience at $495/hour.  The Laffey

Matrix has been considered in cases litigated outside of Washington, DC, where it was

developed.  See, e.g., *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219,

229 (4th Cir. 2009); *Mancini v. Dan P. Plute, Inc.*,  358 Fed.Appx. 886, 889, 2009 WL 4912140,

*2 (9th Cir. 2009); *Rivera v. Rivera*, 2011 WL 3667486, *2 (N.D. Cal. 2011).  The updated

Laffey Matrix – found at www.laffeymatrix.com – has been widely accepted, also in cases

beyond Washington, DC.[4]  *Kempf v. Barrett Bus. Servs*., No. C-06-3161 SC, 2007 U.S. Dist.

LEXIS 89447 (N.D. Cal. Nov. 20, 2007) (finding attorneys' requested fees reasonable when

compared to rates in the Updated Matrix); *Interfaith Community Organization v. Honeywell

International, Inc.,* 426 F.3d 694 (3rd Cir. 2005); *In Re HPL Technologies, Inc. Securities

Litigation*, 366 F.Supp.2d 912, 921 (N.D. Cal. 2005).  The adjusted Laffey Matrix sets the rate

for an attorney with 20 or more years of experience at $734/hour.

　　　　The National Law Journal's survey of billing rates in December 2010,

(http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202475563622), reveals median partner

billing rates ranges from $260 to $785, and median associate billing rates of $180 to $455.  The

same survey reveals that Littler Mendelson, Tyson's local counsel here, has partner billing rates

of $290-$650 per hour, and associate billing rates of $210-$480 per hour.  Akin Gump's rates are

not reported in the survey.

　　　　The experience and skill of the counsel in this case, described in Exhibits 1-13, the

evidence cited above of national rates, and the declarations of Joseph Whatley (attached as Ex.

---

[4] The adjusted Laffey Matrix uses the change in prices in legal services to adjust from the
original matrix, rather than the general rate of inflation as the U.S. Attorneys Office version
does.

15); James Kaster (attached as Ex. 16); Sam Smith (Ex. 17); Bruce Rogers (Ex. 18); William

Baxley (Ex. 19); and Jeffrey Bramlett (Ex. 20) all support the rates sought by plaintiffs here.  As

described in detail in the attached declarations, plaintiffs' attorneys seek rates of $350-$625 for

partners, and $250-$350 for associates.

2.   <u>Reasonable Hours</u>

The declarations attached as Exhibits 1-13 provide both the daily time records and also an

overview of how the time was spent, establishing that the total hours required to bring this

litigation to a successful conclusion was reasonable.  Moreover, skilled and experienced counsel

who have reviewed Plaintiffs' fee petition found that not only the rates but also the total fee

sought are reasonable.  Whatley Decl. ¶ 12, Ex. 15; Bramlett Decl. ¶ 12, Ex. 20.

The involvement of multiple attorneys should not give rise to any concern about the

reasonableness of the hours.  The Eleventh Circuit has made it clear in *Norman* that "[t]here is

nothing inherently unreasonable about a client having multiple attorneys." 836 F. 2d 1302.

Reduction of hours in a case employing multiple attorneys is only warranted if "the attorneys are

unreasonably doing the same work." *Johnson*, 706 F. 2d at 1208.  As set forth by the Eleventh

Circuit in *Barnes*, "a fee applicant is entitled to recover for the hours of multiple attorneys if he

satisfies his burden of showing that the time spent by those attorneys reflects the distinct

contribution of each lawyer to the case and is the customary practice of multiple-lawyer

litigation." 168 F. 3d at 432.  In addition, a prevailing litigant may seek to recover fees including

reasonable time expended by a paralegal for work to the extent such work is "traditionally done

by an attorney." *Allen v. United States Steel Corp.*, 665 F. 2d 689, 697 (5th Cir. Unit B 1982).

Fee applicants are to exercise "billing judgment," i.e., to exclude from their fees "excessive,

redundant or otherwise unnecessary [hours]," which would be unreasonable to bill a client. *See*

*Barnes*, 168 F. 3d 423, 428, (citing *Norman*, 836 F. 2d at 1301).

14

In the present case, the involvement of multiple attorneys was, in large part, caused by Tyson's litigation strategy to have the original *Fox* case broken up into myriad smaller cases. The need to litigate separate cases led to the addition of several additional firms.  This was consistent with Tyson's litigation tactics from the outset of this litigation, in which many issues were addressed repeatedly (summary judgment on five occasions, certification and decertification repeatedly).  It is well settled that when defendant "runs the meter" like this, it must, in the end, "pick up the tab."  *Shorter v. Valley Bank & Trust Co*., 678 F.Supp. 714, 725 (N.D. Ill. 1988).  Nonetheless, the fee applicants took affirmative steps to avoid excessive, redundant or duplicative hours during the litigation of this matter.  *See* Webber Decl. ¶¶ 13, 19, Ex. 1; Wiggins Decl. ¶¶ 7-8, Ex. 2; Gilden Decl. ¶9, Ex. 6; Camp Decl. ¶¶ 5, 8, Ex. 8; Gardner Decl.  ¶¶ 6, 7, 10, Ex. 9; Maniklal Dep. ¶ 10, Ex. 12.  Counsel took steps to distribute the work assignments and have exercised billing judgment to edit the unnecessary duplicative hours. *See* Webber Decl. ¶¶ 8-10, Ex. 1; Wiggins Decl. ¶¶ 7-8, Ex. 2; Gilden Decl. ¶9, Ex. 6; Camp Decl. ¶¶ 5, 8, Ex. 8; Gardner Decl. ¶¶ 6, 7, Ex. 9.

### 3.   No Factors Support Decreasing Lodestar

Once determined, the "lodestar" may be adjusted to "arrive at a reasonable fee in light of the relation of the results obtained to the work performed." *Dillard*, 213 F. 3d at 1355-1356, citing *Perkins v. Mobile Housing Bd*., 847 F. 2d 735, 739 (11th Cir. 1988). If the result of the litigation was "excellent" then the court, "should compensate for all hours reasonably expended." *Norman*, 836 F. 2d at 1302.  In making this assessment, the Eleventh Circuit notes that in civil rights cases, "[t]he vindication of a constitutional right is important even if only a small amount of money is involved." *Id.*  It is undisputed that the plaintiffs are the prevailing parties in this matter.  Moreover, plaintiffs prevailed against an extremely persistent defendant, obtaining a settlement which will pay, on average, more per capita than any other settlement of similar

15

litigation against poultry plants that Plaintiffs are aware of.  Indeed, the amount paid in this settlement is equivalent to pay for 13 minutes per day at single damages or 6.5 minutes per day with half the settlement allocated to liquidated damages.  In contrast, the jury in *Chao v. Tyson Foods, Inc.* awarded only approximately 2 minutes per day;[5] the jury in *Garcia v. Tyson Foods* awarded approximately 10% of the amount plaintiffs sought;[6] and in *Lopez v. Tyson Foods*, defendant prevailed before a jury.[7]  Plaintiffs successfully defeated motions to decertify and for summary judgment.  This record is sufficient to support a finding that the plaintiffs experienced "excellent" results in this litigation.

The amount of attorneys' fees awards should not be reduced to achieve proportionality with the amount received by the plaintiffs.  In *City of Riverside v. Rivera*, the Supreme Court expressly rejected the argument that a fee award should be a proportion of the damages award received by the plaintiff. 477 U.S. 561, 574 (1986). The Court stated

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*Id.*, at 578. The Court also noted in a footnote that the defendants cannot complain about the number of hours necessarily spent by the plaintiff in response to its own tenacious litigation of the case. *Id.* at 581.

Moreover, Congress has determined that it is important for FLSA rights to be enforced,

---

[5] http://www.law360.com/southeast/articles/132651/corrected-jury-finds-for-tyson-workers-in-flsa-suit

[6] http://www.law360.com/articles/233059/jury-sides-with-tyson-workers-in-flsa-class-action

[7] http://www.law360.com/articles/248048/neb-jury-hands-tyson-victory-in-don-doff-action

and that reasonable attorneys' fees must be awarded in order to provide for such enforcement, particularly where the victims of FLSA violations are often low-wage workers whose per-person damages may not be significant. *See, e.g., Fegley v. Higgins*, 19 F.3d 1126, 1134-45 (6th Cir. 1994) (FLSA fee award "'encourages the vindication of congressionally identified policies and rights'"); *United Slate, Tile and Composition Roofers v. G&M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984) (purpose of FLSA fee award "is to insure effective access to the judicial process"); *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946) ("Obviously Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs."); *Shannon v. Saab Training USA, LLC*, Case No. 6:08-cv-803-Orl-19DAB, 2009 WL 1772808, *3 (M.D. Fla. June 23, 2009) ("To encourage private enforcement of statutory rights under the FLSA, Congress created a fee-shifting provision"). Thus, it is not uncommon for attorney fee awards to exceed the amount recovered by plaintiffs in lost wages.[8]  In light of the long and complex history of this case, and the significant recovery of unpaid overtime for the members of the collective action, the attorneys' fee award requested is fair and reasonable.

                4.     <u>Summary of the Lodestar Sought</u>

In the Settlement Agreement the Court has approved, Defendant agreed to pay plaintiffs' counsel an amount not to exceed $14,500,000.00 as payment for the reasonable attorneys' fees and costs related to the MDL action, which includes payment for reasonable attorney's fees and

---

[8] This principal has been applied in many cases in the FLSA context. *See, e.g., Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228-29 (7th Cir. 1972); *Perdomo v. Sears, Roebuck & Co.*, Case No. 97-2822-CIV-T-17A, 1999 WL 1427752, *24 (M.D. Fla. Dec. 3, 1999); *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1327 (M.D. Fla. 2001); *Heder v. City of Two Rivers*, 255 F.Supp.2d 947, 955 (E.D. Wis. 2003); *Perrin v. John B. Webb & Assocs.*, Case No. 6:04-cv-399-Orl.-KRS, 2005 WL 2465022, *11-12 (M.D. Fla. Oct. 6, 2005) ("in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time").

costs associated with *Williams v. Tyson Foods, Inc.*, No. 07-cv-00093 (M.D. Ga.). *Id.* at ¶ 5.1.

After reimbursement of expenses which total $1,720,287.78, that leaves $12,779,712.22 to

compensate Plaintiffs' for their total lodestar of $14,661,247.13.[9]  Exs. 1-13.

     The total amount payable as attorneys' fees represents approximately 87% of the actual

lodestar fees generated by all counsel in prosecuting the claims in the underlying courts, the

MDL proceeding, and settlement proceedings.  The firms representing Plaintiffs have expended a

total of over 38,580 hours pursuing this litigation, which translates into an average hourly rate of

$380 per hour based upon actual lodestar, and only $331 per hour based upon the attorneys' fee

portion of the award requested.  The attorneys' fees requested also include all time Plaintiffs'

counsel will spend implementing the Agreement.  In this case, the Court does not have to

apportion the fees among Plaintiffs' counsel, as they have already reached an agreement as to

how the fees will be allocated among counsel.  *See Longden v. Sunderman,* 979 F.2d 1095, 1101

(5th Cir. 1992) (approving private fee-sharing agreement amongst counsel).  In the course of this

litigation more than 13 law firms represented the workers in the underlying actions and MDL

proceeding. Lead counsel assigned work as needed to ensure the efficient litigation of the case

and avoid the unnecessary expenditures of times and expenses.

     In addition to fees, all "reasonable expenses incurred in case preparation, during the

course of the litigation, or as an aspect of settlement of the case," may be taxed as costs.

*Dowdell*, 689 F. 2d at 1192.  In assessing the expenses incurred, "the standard of reasonableness

is to be given a liberal interpretation." *Hearn v. General Electric Company*, Case No. 93-T-424-

S, 1996 WL 937034 at *7 (M.D. Ala. Sept. 12, 1996), citing *NAACP v. City of Evergreen*, 812 F.

2d 1332, 1337 (11th Cir. 1987), and *Dowdell*, 698 F. 2d at 1192.  The total incurred in each

---

[9] Plaintiffs' counsel have agreed among themselves on the allocation of fees among counsel.

expense category has been set forth separately.  Court reporting costs for deposition transcripts, copying costs, court filing fees, travel costs, etc. are necessary to prosecute a case of this kind. These expenses include those that were necessary to prosecute Plaintiffs' claims.

Tyson agrees that Plaintiffs' counsel's requested amount for attorneys' fees and costs is appropriate under the circumstances. *See* Agreement, at ¶ 5.2. The hourly rates charged by Plaintiffs' counsel and the amount of hours worked are reasonable based on prevailing market rates.  Moreover, the complexity of the procedural and factual issues of these cases, the inability of Plaintiffs' counsel to handle other matters due to the total hours consumed by these cases, and the degree of success in terms of the settlement, justify the requested fee award.

## III.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, and in consideration of all evidence submitted herewith, the Plaintiffs petition for an award of the attorneys' fees and costs in the total sum relief as requested and set forth herein.

Dated: October 11, 2011                          Respectfully submitted,


                                                 */s/Christine E. Webber*

Joseph M. Sellers                                Robert E. DeRose
Christine E. Webber                              BARKAN MEIZLISH HANDELMAN
COHEN MILSTEIN SELLERS                           GOODIN DEROSE WENTZ, LLP
& TOLL PLLC                                      250 East Broad Street
1100 New York Avenue, NW                         10th Floor
West Tower, Suite 500                            Columbus, OH 43215
Washington, D.C. 20005                           Telephone: (614) 221-4221
Telephone: (202) 408-4600                        Facsimile: (614) 744-2300
Facsimile: (202) 408-4699                        Email: bderose@barkanmeizlish.com
Email: jsellers@cohenmilstein.com                       kstone@barkanmeizlish.com
        cwebber@cohenmilstein.com


19

1212306.2 2

George E. Barrett
David W. Garrison
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
Email: gbarrett@barrettjohnston.com
        dgarrison@barrettjohnston.com

Peter D. Winebrake
THE WINEBRAKE LAW FIRM, LLC
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Telephone: (215) 884-2491
Facsimile: (215) 884-2492
Email: pwinebrake@winebrakelaw.com

Roger K. Doolittle
460 Briarwood Drive
Suite 500
Jackson, MS 39206
Telephone: (601) 957-9777
Facsimile: (601) 957-9779
Email: rogerkdoolittle@aol.com

Jairus Gilden
Of Counsel, METCALF, KASPARI,
HOWARD, ENGDAHL & LAZARUS
333Parkdale Plaza
1660 South Highway 100
Minneapolis, MN 55416-1573
Telephone: (312) 239-0524
Facsimile: (800) 845-1962
Email: jgilden@sbcglobal.net

Robert L. Wiggins, Jr.
Robert F. Childs, Jr.
Candis McGowan
Ann K. Wiggins
WIGGINS, CHILDS, QUINN &
PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
Telephone: (205) 314-0500
Fax: (205) 254-1500
Email: rwiggins@wcqp.com
        rfc@wcqp.com
        cmcgowan@wcqp.com
        akw@wcqp.com

Preyesh Maniklal
MANIKLAL & DENNIS, LLP
3250 Peachtree Industrial Blvd.
Suite 101
Duluth, GA 30096
Telephone: (404) 875-0630
Facsimile: (678) 990-5887
Email: preyeshmaniklal@gcmdlaw.com

Robert J. Camp
THE COCHRAN FIRM
505 North 20th St., Suite 825
Birmingham, AL 35203
Telephone: (205) 244-1115
Facsimile: (205) 244-1171
Email: rcamp@cochranfirm.com

1212306.2 2

Debra Gardner
PUBLIC JUSTICE CENTER
1 N Charles St., Suite 200
Baltimore, MD 21201
Telephone: (410) 625-9409
Facsimile: (410) 625-9423
Email: gardnerd@publicjustice.org

Richard Celler
MORGAN & MORGAN
7450 Griffin Road, Suite 230
Davie, FL 33314
Telephone: (954) 318-0268
Facsimie: (954) 333-3515
Email: rceller@forthepeople.com

Deirdre M. Stephens-Johnson
David Moskowitz
MORGAN & MORGAN, P.A.
191 Peachtree Street, N.E.
42nd Floor
Atlanta, GA 30303
Telephone: (404) 965-8811
Facsimile: (404) 965-8812
Email: djohnson@forthepeople.com
        dmoskowitz@forthepeople.com

**<u>Certificate of Service</u>**

I hereby certify that on October 11, 2011, I electronically filed Plaintiffs' Motion for Attorneys' Fees and Costs and its Memorandum in Support with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those registered as CM/ECF participants.


*/s/Christine E. Webber*

22